UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER M. STARR,

       Plaintiff,                      Case No. 1:22-cv-106

v.                                             Honorable Ray Kent

E. COE HILL et al.,

       Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's action for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LCF medical providers and officials: Medical Provider E. Coe Hill, Medical Doctor Margaret Quellete, Medical Provider Susan Groff, Warden Bryan Morrison, and Health Unit Manager (HUM) Nathan Mikel. (Am. Compl., ECF No. 7, PageID.40–41.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

By order issued on February 11, 2022, the Court directed Plaintiff to "submit an amended complaint by filing his complaint on the requisite form within twenty-eight (28) days." (ECF No. 5, PageID.36.) The Court advised Plaintiff that "[t]he amended complaint [would] take the place of the original complaint, so it must include all of the Defendants that Plaintiff intend[ed] to sue and all of the claims that Plaintiff intend[ed] to raise," and "Plaintiff must allege, in chronological order, what each Defendant did or did not do on each date." (*Id.*) In response, Plaintiff timely filed an amended complaint. (ECF No. 7.)

In Plaintiff's amended complaint, he states:

> Grievant is lodge[d] against medical provider (E. Coe Hill) on 8-16-21/10-31-21/11-8-21 denied and furthered delayed treatment to prisoner medical need (emergent) [(]bone spurs) (bulging disc) (Bell Palsy) (back spasms) (degenerative disc [deformity]) and knee [deformity] to pre-existing conditions (exacerbated) by exposure of COVID-19. Recommendation [Health Facility Administrator] (HFA) still to date no treatment (a deliberate indifference) in delay (cruel and unusual punishment).

(*Id.*, PageID.42.)[2] Plaintiff sets forth essentially the same word-for-word allegations against Medical Provider Susan Groff. (*Id.*, PageID.42–43.) With respect to Doctor Margaret Quellete, Plaintiff states: "Grievant is lodge[d] against Dr. Margaret[] Quellete as superior to both (medical providers) as onsi[te] (Dr.) denial and furthered delayed treatment to prisoner 8-16-21/10-31-21/11-8-21 of existing pre-conditions (exacerbated) toward irreparable harm without acute treatment to (bulging disc) (bone spurs) (Bell Palsy) (back spasms) (degenerative spinal [deformity]) and knee [deformity]." (*Id.*, PageID.42.)

As to Warden Bryan Morrison, Plaintiff states:

> Grievant is lodge[d] against Bryan Morrison (Warden) on 8-16-21/10-31-21/11-8-21 to pre-existing conditions (that exacerbated) by exposure that wasn't prevented as to ensure that procedures are developed as necessary to implement requirements

---

[2] The Court retains the parentheses that Plaintiff used in his amended complaint when quoting Plaintiff's amended complaint in this opinion.

4

> set forth in Polic[y] Directives of Health Service. (To evade irreparable harm) to the prisoner (bone spurs) (Bell Palsy) (back spasms) (degenerative spinal [deformity] and knee [deformity].

(*Id.*, PageID.43.) Finally, with respect to HUM Nathan Mikel, Plaintiff states: "Grievant is lodge[d] against Mikel[,] Nathan (Health Unit Manager) on 8-16-21/10-31-21/11-8-21 to pre-existing conditions as to neglect of (bone spurs) (Bell Palsy) (back spasms) (degenerative spinal [deformity] and knee [deformity] where additional services are required for prisoner which exhibit emergent by appropriate assignment (HUM) for (QHP) Qualified Health Provider." (*Id.*)

Plaintiff does not identify the specific constitutional rights that Defendants infringed; however, the allegations in his complaint implicate the protections of the Eighth Amendment. As relief, Plaintiff requests compensatory and punitive damages, and he requests "[a] judicial remedy awarded to restrain a particular activity of further denial of a needed constructive or reconstructive surgery service to reform body structure or correct defects[] for purposes to avoid further irreparable harm." (*Id.*, PageID.44.)

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

  A.  **Defendant Quellete**

In Plaintiff's amended complaint, he seeks to hold Defendant Quellete liable for the actions of her subordinates because she is the "superior to both (medical providers) as onsi[te] (Dr.)." (ECF No. 7, PageID.42.) However, Defendant Quellete may not be held liable for the unconstitutional conduct of her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates

6

are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Furthermore, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See id.* at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff has failed to allege that Defendant Quellete engaged in any active unconstitutional behavior. Moreover, even assuming that Defendant Quellete could be held liable despite Plaintiff's failure to allege that she engaged in any active unconstitutional conduct, for the same reasons set forth below, Plaintiff fails to allege sufficient facts to state a plausible Eighth Amendment claim against her.

**B.     Eighth Amendment**

Plaintiff's allegations in his amended complaint implicate the protections of the Eighth Amendment. (*See* ECF No. 7, PageID.42–43.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

8

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

9

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this action, Plaintiff states that "[g]rievant is lodge[d] against [Defendants Hill and Groff] on 8-16-21/10-31-21/11-8-21 denied and furthered delayed treatment to prisoner medical need (emergent) [(]bone spurs) (bulging disc) (Bell Palsy) (back spasms) (degenerative disc [deformity]) and knee [deformity] to pre-existing conditions (exacerbated) by exposure of COVID-19."[3] (Am. Compl., ECF No. 7, PageID.42–43.) With respect to Defendant Morrison,

---

[3] The Court notes that Plaintiff's allegations against Defendant Quellete are similar to the allegations against Defendants Hill and Groff; however, as discussed above, Plaintiff describes

10

Plaintiff states that "[g]rievant is lodge[d] against [him] on 8-16-21/10-31-21/11-8-21 to preexisting conditions (that exacerbated) by exposure that wasn't prevented as to ensure that procedures are developed as necessary to implement requirements set forth in Polic[y] Directives of Health Service." (*Id.*, PageID.43.) As to Defendant Mikel, Plaintiff states that "[g]rievant is lodge[d] against [him] on 8-16-21/10-31-21/11-8-21 to pre-existing conditions as to neglect of (bone spurs) (Bell Palsy) (back spasms) (degenerative spinal [deformity] and knee [deformity] where additional services are required for prisoner which exhibit emergent by appropriate assignment (HUM) for (QHP)." (*Id.*)

With respect to the objective component of the relevant two-prong test, Plaintiff does not specifically allege that he has the above-listed conditions. *See Dodson v. Wilkinson*, 304 F. App'x 434, 439 (6th Cir. 2008) (discussing that "the objective component requir[es] [allegations] of a 'sufficiently serious' medical need" (citations omitted)). Furthermore, setting aside this pleading deficiency, besides the allegations set forth above, Plaintiff's amended complaint contains no further allegations regarding his conditions and contains no explanation regarding any connection between these conditions and the medical care he received from Defendants. (*See* ECF No. 7, PageID.42–43); *cf. Napier*, 238 F.3d at 742 (discussing that a plaintiff must show a "detrimental effect of the delay in medical treatment" with "medical evidence").

Nevertheless, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test; however, as explained below, Plaintiff fails to show that Defendants were deliberately indifferent to his serious medical needs. As an initial matter, nothing in the amended complaint suggests that any of the named Defendants were

---

Defendant Quellete's involvement as related to her role as the "superior to both (medical providers) as onsi[te] (Dr.)." (Am. Compl., ECF No. 7, PageID.42.)

11

aware of, or should have been aware of, Plaintiff's medical conditions because Plaintiff's allegations do not suggest that they had any personal knowledge of Plaintiff's conditions, such as from evaluating Plaintiff or providing medical treatment to him. *See Farmer*, 511 U.S. at 837 (discussing that to be liable an official must be shown to have "know[n] of and disregard[ed] an excessive risk to inmate health or safety"); *cf. Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Although Plaintiff alleges in a conclusory manner that Defendants "denied and furthered delayed treatment," Plaintiff does not provide any explanation as to how Defendants were involved in the denial or delay of his medical treatment.[4] Because Plaintiff fails to allege any facts suggesting that Defendants were aware of his serious medical needs or that Defendants were personally involved in his medical care, Plaintiff fails to show that Defendants were deliberately indifferent or that the treatment provided by any of the named Defendants was

---

[4] The Court notes that, as exhibits, Plaintiff submitted two Michigan Bureau of Professional Licensing complaint forms that he filled out; it is unclear whether Plaintiff submitted these complaint forms to the Bureau of Professional Licensing. (ECF No. 1-1, PageID.8–9.) The first complaint form indicates that the "[a]llegation [is] [b]eing [f]iled [a]gainst" "Margarett Quellette Dr." (*Id.*, PageID.8.) Plaintiff states: "Complainant is being denied corrective surgery to repair the severity of degenerative disc from the negligently [sic] of M.D.O.C. contracted med. officers." (*Id.*) The second complaint form indicates that the "[a]llegation [is] [b]eing [f]iled [a]gainst" "E. Coe Hill (Medical Provider)." (*Id.*, PageID.9.) Plaintiff states: "Complainant is being negligently treated toward a irreparable state of harm . . [. .] There is a denial of corrective surgery to lessen this state of physical and mental harm." (*Id.*) As is the case with Plaintiff's amended complaint, based on the information set forth in the complaints to the Michigan Bureau of Professional Licensing, Defendants Quellete's and Hill's involvement in the "denial of corrective surgery" is unclear. Further, Plaintiff's statements in these exhibits suggest that any denial of surgery was due to the negligence of medical providers. However, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence" *Farmer*, 511 U.S. at 835. The information set forth in these exhibits only suggests that Defendants may have acted negligently, which is insufficient to state an Eighth Amendment claim.

"so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605 (citation omitted).

Moreover, to the extent that Plaintiff disagreed with the treatment decisions of any of the named Defendants during the time period relevant to this action, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 72 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). Furthermore, with respect to Defendant Morrison, the warden at LCF, officials, such as Defendant, who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (finding that custody officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))).

Additionally, to the extent that Plaintiff seeks to hold Defendants liable for any responses, or lack thereof, to any "grievan[ces]" that he filed against them (ECF No. 7, PageID.42–43), the mere denial of a prisoner's grievance does not state a claim of constitutional dimension. *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) (citations omitted) ("The denial of the grievance is not the same as the denial of a request to receive medical care." (quoting *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001))).

Finally, with respect to Plaintiff's suggestion that his exposure to COVID-19 "exacerbated" his medical conditions, although the Court is sympathetic to Plaintiff's concerns

about the COVID-19 virus, Plaintiff's claims are entirely conclusory. The MDOC has promulgated numerous policies to address the risk posed to inmates by COVID-19. *See, e.g.*, MDOC Director's Office Memorandum (DOM) DOM 2020-30 (eff. Apr. 8, 2020) (mandating multiple protective measures including the wearing of masks by prisoners and staff, screening of all individuals before entering prison facilities, keeping of social distance, restricting visits and phone calls, and limiting transfers and cell moves); DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer); DOM 2020-30R3 (eff. May 27, 2020); DOM 2020-30R4 (eff. Aug. 10, 2020); DOM 2020-30R5 (eff. Aug. 25, 2020); DOM 2020-30R6 (eff. Aug. 27, 2020); DOM 2020-30R7 (eff. Nov. 5, 2020); DOM 2020-30R8 (eff. Nov. 24, 2020); DOM 2021-26 (eff. Jan. 1, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R2 (eff. Jan. 21, 2021); DOM 2021-26R3 (eff. Jan. 25, 2021); DOM 2021-26R4 (eff. Mar. 5, 2021); DOM 2021-26R5 (eff. Mar. 19, 2021); DOM 2021-26R6 (eff. Mar. 26, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R8 (eff. Aug. 6, 2021); DOM 2021-26R9 (eff. Aug. 23, 2021); DOM 2021-26R10 (eff. Oct. 11, 2021); DOM 2021-26R11 (eff. Nov. 19, 2021); DOM 2021-26R12 (eff. Dec. 3, 2021) DOM 2022-21R (eff. Jan. 11, 2022); DOM 2022-21R2 (eff. Jan. 14, 2022); DOM 2022-21R3 (eff. Jan. 18, 2022); DOM 2022-21R4 (eff. Jan. 24, 2022); DOM 2022-21R5 (eff. Feb. 9, 2022); DOM 2022-21R6 (eff. Feb. 15, 2022); DOM 2022-21R7 (eff. Feb. 28, 2022); DOM 2022-21R8 (eff. Mar. 3, 2022).[5] Although Plaintiff makes a conclusory allegation

---

[5] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing

suggesting that his exposure to COVID-19 exacerbated his medical conditions, and he references, without further explanation, "ensur[ing] that procedures [we]re developed as necessary to implement requirements set forth in Polic[y] Directives of Health Service," Plaintiff fails to identify any specific actions taken by the named Defendants that he believes resulted in constitutionally inadequate conditions during his confinement. (ECF No. 7, PageID.43); *see Iqbal*, 556 U.S. at 676 (holding that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Accordingly, for these reasons, Plaintiff fails to show that any named Defendants were deliberately indifferent to Plaintiff's health and safety. Plaintiff therefore fails to state a plausible Eighth Amendment claim against Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should

---

material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 24, 2022                          /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge